IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHILOH FOOTE, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO: |
| V. | § | _____ |
| | § | |
| RICARDO'S LONE STAR, LLC D/B/A | § | TITLE VII |
| LIKE A CHEETAH AND | § | EMPLOYMENT DISCRIMINATON |
| INNERSTAFF, LLC | § | |
| Defendants. | § | JURY DEMAND |

## COMPLAINT

**NOW COMES,** Plaintiff ("Plaintiff") and avers against Ricardo's Lone Star, LLC ("Defendant") the following:

## PARTIES AND SERVICE

1. Plaintiff is Shiloh Foote, a Citizen of the United States of America and of the State of Texas, and a resident of Erath County.

2. Defendant Ricardo's Lone Star, LLC, d/b/a Like A Cheetah, is a Texas entity, with a registered address of 3480 Lipan Highway, Granbury, TX 76048-4119. Ricardo's Agent for Service of Process is National Registered Agents, Inc. 1999 Bryan Street, Suite 900, Dallas, TX 75201.

3. Defendant Innerstaff LLC, who assisted in placing Plaintiff with Defendant Ricardo's Lone Star, is a Texas LLC with a registered office address of 808 W. Dallas Street, Suite E, Conroe, TX 77301-2257. Innerstaff's Agent for Service of Process is Per Kvien , who has the same address as Innerstaff LLC.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), because Plaintiff asserts federal civil rights claims under the Title VII of the Civil Rights Act of 1964, 42. U.S.C. §2000e et seq. This Court has supplemental jurisdiction over Plaintiff's Texas state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendants, as Defendants regularly conduct business in this District.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Defendant Ricardo's regularly conducts business in this District from its office at 2621 W. U.S. Highway 377, #100, Granbury, TX 76048. Defendant Innerstaff also regularly conducts business in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the federal and state claims herein occurred in this District.

## NATURE OF THIS LAWSUIT

7. This is a lawsuit for sex/gender discrimination by Defendants against Plaintiff in hiring, pay and advancement by the Defendant employer, because she is female, and was, at all times during her employment with Defendant Ricardo's Lone Star discriminated against in favor of a male, in violation of Title VII of the Civil Rights Act of 1964, and Chapter 21 of the Texas Labor Code.

## STATEMENT OF FACTS

8. Plaintiff Shiloh Foote ("Shiloh") had five years of experience in the courier business, including in management and as a Vice President when she started working for Defendant's courier business (Ricardo's Lone Star, LLC, d/b/a "Like A Cheetah') on October 25th, 2018, as a Dispatcher.

9. Plaintiff worked from 7 a.m. to 5 p.m. Monday through Friday and was on call from 5 p.m. to 7 a.m. at home.

10. Plaintiff would get 5 to 10 phone calls each night from medical facilities because Defendant's Owner, Elliot Braswell ("Elliot"), did not notify these clients that Like A Cheetah no longer provided deliveries for the medical industry.

11. Plaintiff's starting pay was $14 an hour and she was required to work a minimum of 40 hours per week. Plaintiff was paid $560.00 per week, although she routinely worked more than 40 hours each week with no overtime pay.

12. During November 2018, Plaintiff applied for the Manager position. She was very qualified for the position. However, Elliot hired a male, Troy Briggs ("Troy"), for the position. Troy's salary as Manager ranged between $1,400.00 to $1,500.00 per week.

13. During Troy's employment with the company, it was evident that he had no experience in the courier business and did not know how to perform his duties as a manager. Almost daily, Troy would delegate his duties to Plaintiff to perform, including the hiring of additional employees which was usually done by management.

14. Troy's employment with the company was short. He abruptly left the company around March 26, 2019, about three months after he was hired. After Troy left the company, Elliot assigned all Troy's duties to Plaintiff, who already had a large workload. Plaintiff was not paid any additional compensation, nor was she given the title of "Manager".

15. On or about March 29, 2019, during a meeting, Elliot Braswell reluctantly agreed to increase Plaintiff's weekly pay rate from $560.00 to $1,000.00. This was still approximately $500.00 less than Troy's weekly rate.

16. In April, 2019, Shiloh's husband Davis Foote ("Davis") began working for Defendant.

17. On Monday, September 30, 2019, at approximately 7:30 a.m.. Plaintiff received a phone call from the police who informed her that an employee of the company was involved in an accident and had died.

18. While Plaintiff was on the phone gathering information, Davis called Elliot to inform him of the news. Then Plaintiff and Davis rushed to the scene.

19. While at the scene, Davis found the specimen per company policy and proceeded to complete the deceased employee's route. At around 12 noon on the day of the accident, Elliot Braswell's wife, Jan Braswell ("Jan"), arrived at the office, and Elliot said that he would be arriving on Friday.

20. At approximately 2:30 p.m. the day of the accident, Davis left the office to pick up his and Shiloh's children from school and returned to the office. Shiloh stayed at the office to perform duties on another route. Shiloh worked a total of 14 hours that day.

21. The next day, on Tuesday, October 1, 2019, Plaintiff received a phone call from Elliot at approximately 7:30 a.m., demanding that Plaintiff and Davis arrive at work at once; however, Elliot did not explain the urgency.

22. When Shiloh and Davis arrived at work, Jan was furious that they had not arrived by 7:00 a.m. However, Shiloh and Davis explained to Jan that they could not arrive earlier than their normal time because they did not have childcare that would allow them to arrive earlier than the drop off time for the children's schools.

23. After arriving that morning, Plaintiff and Davis discovered why they had received the urgent call from Elliot. The deceased employee's father had been calling and threatening Elliot's life. However, Elliot failed to informed Plaintiff and Davis of the active threats, thus putting Plaintiff, Davis and everyone in danger.

24. Around 11:00 a.m., Plaintiff assisted with performing another delivery route, covering for one of the deceased employee's family members, who was also an employee of the company. Meanwhile, Davis performed various office duties and answered the phones. Plaintiff worked approximately 16 hours that day.

25. On Wednesday, October 2, 2019, Plaintiff arrived at work around 9:00 a.m., and Davis was already there. Elliot was in the office and spoke with Plaintiff regarding hiring new people and instructed Plaintiff to read a book he purchased for her entitled "The One Minute Manager" by Kenneth Blanchard, Ph.D.

26. During their conversation, Elliot chastised Plaintiff for allowing an employee to switch vehicles before the end of her shift, although he knew the vehicle the employee had been driving was unsafe and unfit for road usage. Additionally, Davis had actually told the employee to drive a different vehicle, not Plaintiff. Elliot never mentioned anything to Davis about the cars being switched, only Plaintiff.

27. Around 2:40 p.m. the same day, Shiloh and Davis left the office to pick up their children. Prior to their departure, Davis made multiple unsuccessful attempts to reach Elliot to inform him of their departure. After they picked up their children, Elliot called Davis and complained that they were not in the office. Davis instructed Elliot that they were in possession of the night phone, and they were still fielding calls for the company.

28. Elliot then asked for Plaintiff and began chastising her regarding an issue about which Plaintiff had no previous knowledge. During their conversation, Elliot refused to allow Plaintiff to explain and hurriedly hung up the phone after he finished speaking.

29. On Thursday, October 3, 2019, Plaintiff told Elliot and Jan that she would be taking a Paid Time Off (PTO) day. Plaintiff had about five days of accrued PTO. While off, Plaintiff still assisted

Davis with answering phones and computer help from home. Neither Elliot nor Jan ever objected to Plaintiff's request for a PTO day.

30. On Friday, October 4, 2019, Plaintiff requested another PTO day with the company, but still assisted Davis with the phones. Plaintiff had no contact with Elliot or Jan on this day.

31. On Saturday, October 5, and Sunday, October 6, 2019, Plaintiff and Davis were both off for the weekend because it was their anniversary. Elliot texted Davis over the weekend to wish them a Happy Anniversary. Elliot and/or Jan answered the phones over this weekend.

32. On Monday, October 7, 2019, Plaintiff went into the office feeling a little bit better than she had been the previous week. It was a busy day. Plaintiff performed her duties as usual, including payroll, dispatching and various duties. Plaintiff communicated with Elliot and Jan throughout the day. Plaintiff worked approximately 6.5 hours that day.

33. On Tuesday, October 8, 2019, Plaintiff requested another PTO day because she was feeling extremely stressed from the events of the previous day's work. While off, Plaintiff continued to assist Davis by answering phones and working on her home computer. Neither Elliot nor Jan ever contacted, objected to or questioned Shiloh about her utilizing her PTO that day.

34. On Wednesday, October 9, 2019, Plaintiff intended to go to work; however, Davis suggested she stay at home until Davis had an opportunity to speak with Elliot regarding issues that had arisen at the office, including but not limited to, Plaintiff's feeling that she was not being treated equally by Elliot and Jan, and being made to feel like she was not as valuable an employee as the male employees. As usual when off, Shiloh continued to assist Davis with answering the phones and working from her home computer.

35. On the morning of Thursday, October 10, 2019, Elliot called Davis and began swearing at Davis on the phone. Elliot instructed Davis that Plaintiff and Davis were not to go to the office anymore and said they were terminated.

36. Overall, during Plaintiff's employment with Defendant, Plaintiff was not treated equally and was discriminated against in that the men were treated better than Plaintiff was.

37. Many times, Plaintiff would have to ask Davis to speak with Elliot, because Elliot did not take Plaintiff's words and messaging seriously.

38. Plaintiff was discriminated against by Defendant on the basis of her sex/gender (female), as evidenced by the fact that she was paid $500 per week less than Defendant had been paying Troy. Plaintiff was also initially denied the position that Troy was hired for, even though Troy had no courier management experience and Plaintiff had five years of courier management experience.

39. After Plaintiff's termination, Defendants replaced her with a male.

## COUNT ONE - 
## DISCRIMINATION IN PAY BASED ON SEX - VIOLATION OF THE EQUAL PAY ACT OF 1963 (29 U.S.C. Chapter 8 § 206 (a); TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

40. All preceding paragraphs are incorporated herein as if fully set forth at length.

41. Plaintiff was paid different wages than were paid to employees of the opposite sex; (2) Plaintiff and those male employees performed equal work requiring equal skill, effort, and responsibility; and (3) the employees shared similar working conditions; Plaintiff was damaged by this unlawful wage discrimination on the basis of gender, in an amount to be determined at trial.

## COUNT TWO - DISPARATE TREATMENT - VIOLATION OF TITLE VII - CIVIL RIGHTS ACT OF 1964

42. All preceding paragraphs are incorporated herein as if fully set forth at length.

43. The Plaintiff belonged to a protected class; she was eminently qualified for the job of Manager; she was subjected to an adverse employment action, in that she was denied the title and formal role of Manager with the same rate of pay as was paid to the previous male manager, even though she was given the same work load and job responsibilities, and the employer gave better treatment to similarly-situated persons, namely men, outside the plaintiff's protected class; and Plaintiff was damaged as the result of this unlawful discrimination, in an amount to be determined at trial.

## COUNT THREE - RETALIATION - VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 & TEXAS COMMISSION ON HUMAN RIGHTS ACT (TCHRA)

44. All preceding paragraphs are incorporated herein as if fully set forth at length.

45. Plaintiff engaged in a protected activity, namely taking Paid Time Off to recover from the traumatic events she was experiencing at work, including the abuse she was receiving from Elliot Braswell, the refusal to treat her as he would treat male employees, and to pay her equal pay for equal work; that Elliot Braswell and Defendants terminated her from her job with Like A Cheetah; and there was a causal connection between the protected activity and her termination from her role by Defendants; and Plaintiff was damaged by her termination in an amount to be determined at trial.

## COUNT FOUR - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. All preceding paragraphs are incorporated herein as if fully set forth at length.

47. Defendants acted intentionally or recklessly; (2) the Defendants' conduct was extreme and outrageous; (3) that conduct caused the Plaintiff emotional distress; and (4) the emotional distress suffered by the Plaintiff was severe.

## CONDITIONS PRECEDENT

**48.** All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission and the Texas Workforce Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## DAMAGES

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. At least two times Plaintiff's annual wages money damages;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Emotional pain;

e. Expert fees as the Court deems appropriate;

f. Front pay in an amount the Court deems equitable and just to make plaintiff whole;

g. Prejudgment interest;

h. Loss of enjoyment of life;

i. Mental anguish in the past;

j. Mental anguish in the future;

k. Loss of earnings in the past;

l. Loss of earning capacity which will, in all probability, be incurred in the future; and

m. Loss of benefits.

## EXEMPLARY DAMAGES

Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order

to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Shiloh Foote respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Dated: December 4, 2020

Respectfully submitted,

By: /s/ Renea Overstreet
Renea Overstreet
Texas Bar No. 24066704
E-Mail: rdolaw@gmail.com
2100 N. Main Street, Suite 228
Fort Worth, Texas 76164
Tel. (817) 810-9747
Fax. (1-855) 299-5593
Attorney for Plaintiff
Shiloh Foote